## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE J. WARFIELD, as the RECEIVER FOR RESOURCE DEVELOPMENT INTERNATIONAL, et al., | § § § § § | |
| **Plaintiff,** | § § | |
| vs. | § § | |
| MARK ARPE, KATHY ARPE, JANET BELL, "JOHN DOE" BELL, JANET GRACYALNY, BRIAN GRACYALNY, AGNES HELGESEN, DALLAS JOHNSTON, LINDA JOHNSTON, JAY LAWRENCE CONSULTING, INC., SONDI LIND, "JOHN DOE" LIND, JOSEPH MADDEN, "JANE DOE" MADDEN, MARK NILSON, KATRINE NILSON, PHILLIP PIA, PATRICIA PIA, WAYNE RICARTE, "JANE DOE" RICARTE, CLIFFORD SLANEY, SHERRY SLANEY, DONALD SLANEY, "JANE DOE"SLANEY NO. 1, IVEY SLANEY, "JOHN DOE" SLANEY, MATTHEW SLANEY, "JANE DOE" SLANEY NO. 2, STEVEN SLANEY, DEBRA SLANEY, CARL WIWEL, GRETA WIWEL, BRYAN ZUREL, "JANE DOE" ZUREL, | § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No: 3:05-cv-1457-R |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Defendants Clifford Slaney, Sherry Slaney, Donald Slaney, Ivey Slaney, Steven Slaney,

Debra Slaney, Dallas Johnston, and Linda Johnston have filed a Motion to Dismiss all claims against

them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil

Procedure.  That motion is now before the Court.  For the reasons discussed below, the Court **DENIES** the Motion to Dismiss.

## I. BACKGROUND

This case, *Warfield v. Arpe*, Civ. No. 3:05-cv-1457-R (N.D.Tex.), arises out of an earlier-filed lawsuit before this Court entitled, *SEC v. Res. Dev. Int'l*, Civ. No. 3:02-cv-605-R (N.D.Tex.) (the RDI case).  In the Underlying Lawsuit, the Securities and Exchange Commission (SEC) has prosecuted several individuals and entities for operating a fraudulent "prime bank" securities scheme known as the Resource Development International Trading Program (RDI).  The RDI program functioned as a fraudulent Ponzi scheme and not as a legitimate investment program.

Shortly after the RDI case was filed, the Court appointed Lawrence J. Warfield to serve as receiver for RDI and its affiliated entities.  Warfield's order of appointment ordered him to collect, receive, and take exclusive custody and control and possession of the RDI defendants' wrongfully-acquired investor funds and assets (the Receivership Assets). The order also authorized Warfield to institute proceedings as necessary for the protection and the collection of the Receivership Assets. This lawsuit is one of those proceedings.

The RDI program was masterminded for over two years by David Edwards and his father, James Edwards.  RDI arose from an earlier Ponzi scheme known as Dennel Finance Limited (Dennel), which was created and directed by Benjamin Franklin Cook.[1]  After the Dennel program was shut-down, the Edwardses and others began offering and selling investments in RDI and other affiliated entities that operated in conjunction with the RDI program, one of which was Pacific

---

[1]In March 1999, the SEC shut down the Dennel program after filing suit against Cook and his affiliates for securities fraud.  This Court also presided over the SEC's prosecution of Cook and other operators and facilitators of the Dennel program.  *See S.E.C. v. Cook, et al.*, Civ. No 3:99-cv-571-R (N.D.Tex.).

International Limited Partnership (PILP).

Promised with high returns, hundreds of investors were lured into investing in RDI and its affiliated entities.  Instead of investing those funds as promised, the Edwardses used new investments to make false "interest" payments and "profit" distributions to current and previous investors, in addition to using those funds for personal use.  Since new investments were necessary to keep the scheme afloat, the Edwardses recruited several people to serve as brokers and facilitators in soliciting new investors.  From approximately January 1999 until at least September 2001, RDI collected more than $73 million from more than 1,300 investors from at least 34 different states.

While managing the RDI scheme, David Edwards approached defendant William Slaney, an Idaho resident, about investing in PILP.  Edwards also asked Slaney to help him locate other investors for the program and promised Slaney that he would receive commissions for every investor that he recruited.  Slaney agreed to this proposition and shortly thereafter formed an entity known as Disability Services International, Inc. (DSI).  Slaney opened an offshore bank account for DSI at the Bank of Nevis in the Federation of Saint Kitts and Nevis and used DSI as a conduit to receive his commissions from the RDI program.  Slaney's commissions were paid into DSI's Bank of Nevis account, and, from there, were forwarded to a Bank of America account owned by BLS, LLC (BLS), a Washington corporation that Slaney owned and operated.

In June 2002, the Receiver filed an ancillary lawsuit, *Warfield v. Byron et al.*, Civ. Action No. 3:02-cv-1371-R (N.D. Tex.), against numerous facilitators of the RDI program, including William Slaney.  Slaney filed for Chapter 7 bankruptcy in the Western District of Washington before a judgment could ever be rendered against him in the Byron case.  In late 2004, during the course

of discovery in Slaney's bankruptcy case, the Receiver discovered that Slaney had utilized BLS's Bank of America account to periodically transfer Receivership Assets to family members and friends who had invested in the RDI program.[2]

With that new knowledge, the Receiver filed this lawsuit, *Warfield v. Arpe,* on July 22, 2005, against more than thirty individuals who – between 1999 and 2001 – allegedly received Ponzi payments from William Slaney and BLS that exceeded their investments into the RDI program.  The Receiver alleges that the funds that he seeks to recover – those amounts that the defendants received in excess of their investments into the RDI program – are Receivership Assets that are traceable to other RDI investors' principal investments into the program.  It is alleged that the defendants named in this lawsuit received, in the aggregate, $1,270,000 in Receivership Assets "without the exchange of any value."  (First Am. Compl. at 6).

Several defendants named in this lawsuit – Clifford Slaney, Sherry Slaney, Donald Slaney, Ivey Slaney, Steven Slaney, Debra Slaney, Dallas Johnston, and Linda Johnston (collectively the Idaho Defendants) –  have now moved to dismiss the Receiver's lawsuit for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  The defendants moving for dismissal are all Idaho residents who were served with process in Idaho.  They claim that this Court does not have jurisdiction over them because they have never conducted business in Texas; maintained offices in Texas; retained any agents or employees in Texas; appointed an agent of process in Texas; solicited business from Texas; sold goods in Texas; entered into any contracts or agreements in Texas or with any Texas residents; or directed any unlawful activity into Texas.

---

[2]The Receiver and Slaney ultimately entered into a stipulation in an adversary proceeding in the Western District of Washington.  In that stipulation, Slaney admitted that he received Receivership Assets that were the proceeds of securities fraud.  (*See* Dkt. Nos. 761 & 766, Civil No. 3:02-cv-605-R (N.D.Tex.)).  As a result, this Court entered judgment against Slaney for $2,500,000.  (*Id.*).

(Sherri Slaney Aff. ¶3; Steve Slaney Aff. ¶3; Donald Slaney Aff. ¶3; Debra Slaney Aff. ¶3; I.Slaney Aff. ¶3; C.Slaney Aff. ¶4; L.Johnston Aff. ¶3; D.Johnston Aff. ¶3).  They also contend that they have never visited Texas in connection with BLS and have never communicated with anyone in Texas regarding BLS, with the lone exception of receiving a letter from the Receiver's attorney. (Sherri Slaney Aff. ¶4; Steve Slaney Aff. ¶4; Donald Slaney Aff. ¶4; Debra Slaney Aff. ¶4; I.Slaney Aff. ¶4; C.Slaney Aff. ¶5; L.Johnston Aff. ¶4; D.Johnston Aff. ¶4).  To the extent that it is alleged that they knowingly assisted William Slaney in violating the Court's injunctive orders in any related case, the Idaho Defendants assert that they were unaware of any lawsuit involving BLS while they received payments from the company and that they had stopped receiving payments from BLS more than a year before March 25, 2002, the date of the Receiver's appointment in the RDI case.

## II. ANALYSIS

In their motion to dismiss, the Idaho Defendants argue that this Court does not have personal jurisdiction over them since they "do not have sufficient contacts with the State of Texas to satisfy the due process requirements of the Texas long-arm statute."  (Def.'s Mot. Br. at 5).  As stated previously, the Idaho Defendants allege that they are Idaho residents who do not have any contacts with the state of Texas.  They claim that they have never conducted business in Texas, maintained any offices in Texas, or retained any agents or employees in Texas.  (*Id*. at 3).  In addition, Defendants contend that they have never visited Texas in connection with BLS and have never entered into any agreements in Texas or with any Texas residents.  (*Id*. at 3, 7).

By contrast, the Receiver contends that there are several independent bases for personal jurisdiction over the Idaho Defendants, all of which demonstrate why the Texas long-arm statute does not apply to the Court's jurisdictional analysis.  (*See* Pl.'s Resp. Br. at 3).  As explained more

fully below, the Receiver claims that the Court has jurisdiction over the Idaho Defendants – all of whom have been properly served – since Congress has authorized nationwide service of process under the federal securities laws, 15 U.S.C. §§77v & 78aa, and the federal receivership statutes, 28 U.S.C. §§754 & 1692.  (*See id.*)

### A.    Rule 12(b)(2) Standard

A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2).  "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Bolin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Felch v. Transportes Lar-Mex S.A. de C.V.*, 92 F.3d 320, 326 (5th Cir.1996). When ruling on the motion, the court must accept the plaintiff's allegations as true and resolve all factual disputes in its favor. *Guidry v. U. S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).  "[T]he court may consider the contents of the record before [it] . . . including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985)).

**B.      Statutory Grounds for Personal Jurisdiction**

The Idaho Defendants have argued that the Court cannot exercise personal jurisdiction over them because they "do not have sufficient contacts with the State of Texas to satisfy the familiar due process requirements under the Texas long-arm statute."  (Def.'s Mot. Br. at 5).  While the Idaho Defendants' argument might have been persuasive if the Receiver had only invoked jurisdiction on the basis of diversity of citizenship, it misses the mark in cases where jurisdiction is premised on a federal statute authorizing nationwide service of process.

As this Court explained in *SEC v. Cook*, 2001 WL 803791, *2 (N.D.Tex. 2001), a federal court sitting in diversity generally applies traditional minimum contacts analysis to questions of personal jurisdiction.  Under the traditional analysis, a court will examine the "contacts" between a defendant and the forum state to determine whether the exercise of jurisdiction over the defendant would be permissible under the due process clause of the Fourteenth Amendment.  By contrast, the requirement that the defendant have minimum contacts with a forum state does not apply in a federal question case in which personal jurisdiction is attained pursuant to a federal statute authorizing nationwide service of process.  *Cook*, 2001 WL 803791 at *2; *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004).

Under Rule 4(k)(1)(D) of the Federal Rules of Civil Procedure, "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant . . .when authorized by a statute of the United States."  FED.R.CIV.P. 4(k)(1)(D).  Where service is authorized by federal statute, the more expansive due process requirements of the Fifth Amendment govern the controversy and "the relevant [due process] inquiry is whether the defendant has had minimum

7

contacts with the United States." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 825-26 (5th Cir. 1996) (quoting *Busch*, 11 F.3d at 1258); *see also*, *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 386-87 (D.C. Cir. 1996).  Consequently, when a congressional statute provides for nationwide service of process, the district court will have personal jurisdiction over a U.S. resident who is personally served in the United States since a resident has sufficient minimum contacts with the U.S. by virtue of his or her residency.  *See  Bellaire Gen. Hosp.*, 97 F.3d at 825-26; *Cook*, 2001 WL 803791, *2-3 (citing *Busch*, 11 F.3d at 1258).

In his briefing, the Receiver asserts two independent statutory grounds for personal jurisdiction over the Idaho Defendants.  First, the Receiver contends that this lawsuit arises out of the SEC's prosecution of securities fraud in the RDI case.  (Pl.'s Resp. Br. at 3-4).  By implication, he argues that the nationwide service of process statutes that were used to establish personal jurisdiction over violators of the securities laws in the RDI case – 15 U.S.C. §§77v & 78aa – also confer personal jurisdiction over the Idaho Defendants, all of whom are alleged of being in possession of Receivership Assets.  (*Id*.).  Second, the Receiver claims that the Court has personal jurisdiction over the Idaho Defendants pursuant to the federal receivership statutes – 28 U.S.C. §§754 & 1692.  (*Id*. at 9-10).  Because those statues permit nationwide service of process upon people who are in possession of receivership assets, the Receiver claims that the exercise of jurisdiction over the Idaho Defendants satisfies any due process concerns.  (*Id*. at 6-7).

The Court will now address these alleged bases for jurisdiction, in turn.  With respect to each pair of statutes, the Court must determine if service in this case is authorized by those statutes.  If so, the Court will have acquired jurisdiction over the Idaho Defendants by operation of Rule 4(k)(1)(D) of the Federal Rules of Civil Procedure.

### 1.    Federal Securities Laws: 15 U.S.C. §§77v & 78aa

The Securities Act of 1933 and the Securities Exchange Act 1934 provide the district courts with jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty" created by the securities laws. 15 U.S.C. §§77v, 78aa.  Both acts authorize nationwide service of process against those who violate their substantive provisions.  *See id.*

As mentioned previously, the Receiver argues that this lawsuit "arises out of and is related to" the SEC's prosecution of alleged securities laws in the RDI case. (First Am. Compl. ¶20). Because the Receiver has brought this case pursuant to his order of appointment in the RDI case, he argues that the nationwide service of process statutes that were used to establish personal jurisdiction in the RDI case – 15 U.S.C. §§77v & 78aa – necessarily confer personal jurisdiction over the Defendants, all of whom are alleged to be in possession of Receivership Assets.  (First Am. Compl. ¶21; Pl.'s Resp. Br. at 3-4).  In response, the Idaho Defendants maintain that the federal securities statutes do not authorize the exercise of personal jurisdiction over them since the Receiver has not asserted securities claims against anyone in this case.  (Def.'s Mot. Br. at 5).  Because he has only asserted claims under the Uniform Fraudulent Transfer Act and for unjust enrichment, the Idaho Defendants argue that the Receiver cannot rely on the federal securities laws to establish personal jurisdiction and must therefore rely upon the Texas long-arm statute.  (*Id.*)

In order for the Receiver to take advantage of the service of process provisions found in 15 U.S.C. §§77v or 78aa, he must show that at least one of his claims against the Idaho Defendants is brought under the Securities Act or the Securities and Exchange Act.  *See, e.g., Busch*, 11 F.3d at 1257.  Section 78aa applies only to any "suit or action to enforce any liability or duty created by [the Securities Exchange Act] or rules and regulations thereunder, or to enjoin any violation of such

chapter or rules and regulations." *See* 15 U.S.C. §78aa. Section 77v is worded similarly with respect to the Securities Act. *See* 15 U.S.C. §77v(a). The relevant question for the court, then, is whether this action is brought to enforce any liability or duty under the federal securities laws.

The Receiver concedes that the Idaho Defendants are not alleged to have committed any securities violations, but nevertheless maintains that he may invoke the nationwide service of process provisions of §§77v and 78aa to establish personal jurisdiction over them because the securities statutes "[are] not construed so narrowly as to exclude from its reach cases such as this in which claims are asserted to recover assets derived from the securities fraud alleged in the underlying lawsuit." (Pl's Resp. Br. at 5) (citing *SEC v. Infinity Group Co.*, 27 F. Supp. 2d 559, 562 (E.D. Pa. 1998)). The Court is not persuaded. Upon closer scrutiny, the Receiver's argument mistakenly concludes that his ability to bring the Idaho *Defendants* before this Court is coextensive with his ability to bring his *claims* in this Court. In other words, the Receiver's argument mistakes the doctrine of personal jurisdiction for the doctrine of subject matter jurisdiction.

It is well-established that in a securities enforcement lawsuit, a federal court has subject matter jurisdiction over equitable actions to recover the proceeds of securities fraud that are wrongfully held by third parties. In such cases, a federal court may order equitable relief against a person who is *not* accused of wrongdoing if the person has received ill-gotten funds and does not have a legitimate claim to those funds. *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) (citing *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir.1998)); *SEC v. Cherif*, 933 F.2d 403, 414 n. 11 (7th Cir. 1991) (federal courts "have jurisdiction to decide the legitimacy of ownership claims made by non-parties to assets alleged to be proceeds from securities laws violations."); *SEC v. Antar*, 831 F. Supp. 380, 401 (D.N.J. 1993) (court determined that it had jurisdiction, pursuant to the securities

laws, over claims against non-violators who possessed illegal profits generated by securities fraud).

The same is true in cases like this one, where a receiver appointed in a securities enforcement suit has brought a separate, ancillary suit against third parties on claims based exclusively on state law.  In such cases, subject matter jurisdiction exists under §1331 and §1367 by operation of a special type of jurisdiction formerly known as "ancillary" jurisdiction.  *See Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995).  Under the ancillary jurisdiction doctrine, "[a] federal receiver may sue in the court of his or her appointment 'to accomplish the ends sought and directed by the suit in which the appointment was made,' and 'such action or suit [will be] regarded as ancillary' to the court's original subject matter jurisdiction in the principal suit."  12 Wright, Miller & Marcus, Federal Practice and Procedure §2985 (2d ed.1997) (quoting *Pope v. Louisville, New Albany & Chicago Ry. Co.*, 173 U.S. 573, 577 (1899)).

It is also well established that the ancillary jurisdiction doctrine provides subject matter jurisdiction over lawsuits brought by a receiver to recover the proceeds of federal securities violations, even when the receiver's claims are based exclusively under state law.  *See Scholes*, 56 F.3d at 753; *Tcherepnin v. Franz*, 485 F.2d 1251, 1255-56 (7th Cir. 1973); *Esbitt v. Dutch-Am. Mercantile Corp.*, 335 F.2d 141, 142 (2d Cir. 1964) ("[I]f [a] receiver's suit is to aid in the accomplishment of the ends sought and directed in the SEC action, it is ancillary to the main action for jurisdictional purposes.").  As the Sixth Circuit has explained:

> [It is] undisputed . . . that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit . . . irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction.

*Haile v. Henderson*, 657 F.2d 816, 822 (6th Cir. 1981).

11

Accordingly, several district courts have found subject matter jurisdiction to exist in suits like this one, where a court-appointed receiver attempts to recover assets dissipated during the course of a Ponzi scheme by suing several individuals in an ancillary action based exclusively on state law. *See Stenger v. World Harvest Church, Inc.*, 2006 WL 870310, *4 (N.D.Ga. 2006) ("[A]n equity receiver has the power to bring ancillary actions to recover assets which were fraudulently transferred to investors in a Ponzi scheme") (citing *Obermaier v. Arnett*, 2002 WL 31654535, *3 (M.D. Fla. 2002)); *Terry v. Walker*, 2006 WL 736861, *1 (W.D. Va. 2006) (finding that because of §§77v(a) and 78aa, the court had "a special brand of pendant jurisdiction" over the Receiver's claims – which were "exclusively based in state law" – including a claim to recover fraudulent conveyances received from a Ponzi scheme).

By contrast, the doctrine of personal jurisdiction examines whether the exercise of jurisdiction over a defendant comports with the constitutional requirements of due process. *Quilling v. Stark*, 2006 WL 1683442, *2 (N.D.Tex. 2006). In this regard, the issue for the Court is whether this suit qualifies for the expanded personal jurisdiction arising by operation of §§77v & 78aa.

Taking notice of the procedural history of the RDI case and its ancillary proceedings, the Court is reluctant to presume that it has personal jurisdiction over the Defendants in this case pursuant to §§77v and 78aa merely because they were served by the receiver appointed in the underlying securities fraud case. Unlike many of the defendants sued in the RDI case, no defendant in this case has been accused of conduct that violates the federal securities laws. Additionally, the Idaho Defendants in this case were never parties to the SEC's principal enforcement action (i.e., the RDI case) and were never named as relief defendants in any of the ancillary cases in which the Receiver prosecuted other individuals – including William Slaney – for violating the federal

12

securities laws in connection with RDI.

For these reasons, it is unclear to what extent the Receiver seeks to enforce a "liability" or "duty" created by the federal securities laws or to "enjoin" any violation of the securities laws by bringing this lawsuit. The parties in this case are merely alleged to be in possession of funds derived from the proceeds of the securities fraud committed by William Slaney and others. As such, the Idaho Defendants are at least one-step removed from any "duty" or "liability" arising under the federal securities laws. *See, e.g., Leroy v. Great W. United Corp.*, 443 U.S. 173, 181-82 & n. 5 (1979) (finding that the reference to the "liabilit[ies] and dut[ies] created by this chapter" in §78aa "clearly corresponds to the various provisions in the 1934 Act that explicitly establish duties for certain participants in the securities market or *that subject such persons* to possible actions brought the Government, the Securities and Exchange Commission, or private litigants.") (emphasis added); *Washington Square Securities Inc. v. Sowers*, 218 F. Supp. 2d 1108, 1112-13 (D. Minn. 2002) (finding that §78aa is "'applicable to the broad universe of potential defendants *subject to the prohibitions of the Act*,' and . . . facilitates 'fair and honest mechanisms for the pricing of securities and to assure that dealing in securities is fair and without undue preference or advantages among investors . . . by enabling suits to enforce rights created by the Act to be brought wherever a defendant could be found'") (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154-56 (1976)) (emphasis added).

The crux of the Receiver's argument is that he should be permitted to invoke §§77v and 78aa as a basis for personal jurisdiction over the Idaho Defendants because other courts have held that innocent third parties may be subject to an order of equitable disgorgement arising out of a violation of the securities laws. (*See* Pl.'s Resp. Br. at 5-6) (citing *SEC v. Infinity Group Co.*, 27 F. Supp. 2d

at 562, and *SEC v. Antar*, 831 F. Supp. 2d at 399).  However, the Court is not persuaded by either

of the authorities that the Receiver cites.   In the *Infinity Group* case, the Eastern District of

Pennsylvania ruled that it had personal jurisdiction over a third-party located in Virginia who had

received funds that had been traced to a Ponzi scheme.  The defendant (Bailey) claimed that he did

not have any contacts with the state of Pennsylvania that would to support personal jurisdiction over

him, but the court denied his motion to dismiss for several independent reasons.  Foremost, the court

found that the defendant had consented to the court's jurisdiction by filing a proof of claim form

with the trustee for a $24,000 investment that he purportedly made in the Ponzi scheme.  *See Infinity*

*Group*, 27 F. Supp. 2d at 562.  Additionally, the court invoked its equitable powers and found that

personal jurisdiction was satisfied under the nationwide service of process provisions governing

federal equity receiverships.  *Id.* at 563-64.

Although the Receiver is correct to point-out that the *Infinity Group* court also found that it

had jurisdiction over the defendant by virtue of §§77v and 78aa, that holding is *dicta* since the court

had already held that the defendant had consented to its jurisdiction by filing a proof of claim form.

More importantly, this Court is respectfully cautious of adopting the court's reasoning in the *Infinity*

*Group* case since the court did not explain why it found that the action before it – an action to

recover a fraudulent transfer – qualified as an action to "enforce 'any liability or duty'" under the

securities laws.  The court's entire analysis was as follows:

> [E]ven if Bailey had not consented to our jurisdiction, we would have jurisdiction
> over him by virtue of the federal securities laws.  15 U.S.C. §78aa and 15 U.S.C.
> §77v give the federal district courts jurisdiction to enforce "any liability or duty"
> created by the Securities Exchange Act of 1934 and the Securities Act of 1933.
> Furthermore, these sections of the securities laws authorize nationwide service of
> process.  *See, e.g., City of Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463, 467
> (M.D. Pa.1985). "'[W]hen a federal court is attempting to exercise personal
> jurisdiction over a defendant in a suit based upon a federal statute providing for

nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States'" rather than with any particular state. *Sovereign Bank, F.S.B. v. Rochester Community Savings Bank*, 907 F. Supp. 123, 125 (E.D. Pa.1995), quoting *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir.1994).   There is absolutely no doubt that Bailey, a Virginia resident, has minimum contacts with the United States. Thus, we hold that we have jurisdiction over Bailey pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934.

*Id.* at 563.   The *Infinity Group* court did not elaborate on why the receiver's action against the

defendant in that case – who was not alleged to have committed any federal securities violations –

qualified as an action  to enforce a duty or liability under the securities laws for purposes of §§77v

and 78aa.   *See id.* at 561 ("The transfers at the heart of the instant motion represent returns on

investments Bailey allegedly made in [the] Ponzi scheme.").   Moreover, the *Bradford Trust Co.* case

that was cited as authority in the *Infinity Group* opinion pertained to a jurisdictional challenge

brought by a seller of securities that was alleged to have committed several material

misrepresentations regarding the manner in which it was holding securities for the plaintiff-buyer,

who would ultimately claim that it detrimentally relied on the seller's misrepresentations.   *See*

*Bradford Trust Co.*, 621 F. Supp. at 466, 469.   As that court found, there was "no dispute " that the

plaintiff's claims arose under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.

§ 78j(b), and Rule 10(b)-5 of its governing regulations, 17 C.F.R. 240.10b-5.   *See id.* at 469.   The

*Infinity Group* court did not take notice of this distinction anywhere in its opinion and did not

attempt to explain why a receiver's action to recover fraudulent transfers should be treated similarly

to a Section 10(b) action for purposes of 15 U.S.C. §78aa.   For these reasons, the Court respectfully

declines to adopt the reasoning of the *Inifintiy Group* case and, therefore, does not conclude on that

basis that this lawsuit qualifies as an action to enforce any duty or liability under the federal

securities laws.

The Court is also skeptical of the Receiver's reliance on the 1993 *Antar* decision since the opinion did not even address the issue of personal jurisdiction.  The *Antar* decision involved a challenge to a federal court's subject matter jurisdiction over a lawsuit brought by the SEC against the former wife and children of an individual who was convicted of securities fraud.  Although none of the defendants were alleged to have violated any of the federal securities laws the SEC did allege that they had received $8,000,000 of assets that were directly traceable to the principal securities fraud at issue in the case.  As a result, the SEC sued the recipients for unjust enrichment and sought to impose a constructive trust over the assets that it had received.  At the summary judgment stage, the defendants unsuccessfully challenged the court's subject matter jurisdiction.  *See id.* at 398-99. In its ruling on the parties' cross-motions for summary judgment, the court found that it had subject matter jurisdiction over the action because of several federal statutes, including §§77v and 78aa. Yet, nothing in the *Antar* opinion suggests that the defendants had also challenged the court's personal jurisdiction over them, and nothing in the opinion lends support for the Receiver's claim that the *Antar* court found that it had personal jurisdiction over the defendants.

The Receiver has admitted in his briefing that no defendant named in this case is alleged to have violated any securities laws.  (*See* Pl's Resp. Br. at 5).  Moreover, the Court is not aware of any caselaw in support of invoking the federal securities laws' service of process statutes (§§77v & 78aa) as a basis for personal jurisdiction over defendants *who are not alleged to have committed any securities violations*, but who, instead, have been sued exclusively on state law claims by a court-appointed receiver in an ancillary lawsuit filed separately from the principal securities enforcement action.  To the extent that the Receiver argues that the *Antar* case demonstrates that this lawsuit qualifies as an action to enforce a "duty" or "liability" under the securities laws for purposes of

§§77v & 78aa, it is not necessary for the Court to make this determination.  The most recent authority arising from similar cases suggest that courts have entirely avoided the issue by instead relying on the nationwide service of process provisions of the federal receivership statutes, 28 U.S.C. §§754 & 1692, to support a finding of personal jurisdiction.  *See, e.g., Terry v. Walker*, 369 F. Supp. 2d at 819-20 (collecting cases); *Quilling v. Stark*, 2006 WL 1683442 at *2-3 (finding that the exercise of personal jurisdiction in a fraudulent transfer suit which arose from a securities fraud case "is predicated" on §§754 & 1692); *Quilling v. Cristell* 2006 WL 316981, *3 (W.D.N.C. 2006). Because these receivership statutes provide a separate jurisdictional basis for finding personal jurisdiction, the Court will now look to those provisions for a jurisdictional basis.

## 2.      Federal Receivership Statutes: 28 U.S.C. §§754 & 1692

In a federal equity receivership, a receivership court may acquire jurisdiction over receivership property located in other districts (and any persons in possession of such property) pursuant to 28 U.S.C. §§754 & 1692.  *Cook*, 2001 WL 803791 *2-3; *see also*, *SEC v. Bilzerian*, 378 F.3d 1100, 1104-06 (D.C. Cir. 2004); *Am. Freedom Train Found. v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984); *Haile*, 657 F.2d at 823-24; *Terry v. June*, 2003 WL 22125300, *5 (W.D. Va. 2003). By enacting §§754 and 1692, Congress has extended the territorial jurisdiction of a receivership court to any district where property of the receivership estate may be located, as long as the receiver complies with all statutory prerequisites to jurisdiction.  *Cook*, 2001 WL 803791 *2 (citing *Vision Commc'ns*, 74 F.3d at 290 and *Haile*, 657 F.2d at 823).

Rule 4(k)(1)(D) permits a federal court to acquire personal jurisdiction over a defendant by virtue of service of process when service is authorized by a federal statute.  FED. R. CIV. P. 4(k)(1)(D).  Section 1692 authorizes service of process upon defendants in possession of

17

receivership assets, subject to the statutory prerequisites found in §754.  Section 1692 provides:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

28 U.S.C. §1692.

Section1692 operates as a nationwide service of process statute that may be used to acquire personal jurisdiction over defendants in possession of receivership assets.  *See Bilzerian*, 378 F.3d at 1103-04 (citing *SEC v. Vision Commc'ns, Inc.*, 74 F.3d at 290-91); *United States v. Ariz. Fuels Corp.*, 739 F.2d 455, 460 (9th Cir. 1984); *Haile*, 657 F.2d at 823; *Terry v. Walker*, 369 F. Supp. 2d 818, 819-21 (W.D.Va. 2005).  However, in order for such service to be valid, the receiver must comply with the requirements of 28 U.S.C. §754.

Section 754 divests a receiver of jurisdiction over receivership property located in different districts if the receiver fails to post bond or comply with other obligations imposed by the statute. In relevant part, the statute provides:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof . . . .
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located.  The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754.

Because service of process under §1692 is only authorized if the receiver has met the requirements of §754, a court may not exercise personal jurisdiction over persons who are served

by a receiver that has failed to comply with §754. *Cook*, 2001 WL 803791 at *2; *Vison Commc'ns*, 74 F.3d at 290. By not complying with §754, a receiver fails to establish control over receivership property and cannot effect valid service of process under §1692, which precludes using Rule 4(k)(1)(D) as a basis for personal jurisdiction. *See Vision Commc'ns*, 74 F.3d at 289-90.

Under 28 U.S.C. §754, the receiver and his or her court of appointment have exclusive jurisdiction and control over receivership property in whatever district it may be located, as long as the receiver has filed copies of the complaint and his or her order of appointment in each district where the property is located. *See* 12 Wright, Miller & Marcus, Federal Practice & Procedure Civ. 2d §2985 (West 2005). Section 1692, "helps to effectuate the appointing court's exclusive jurisdiction [under §754] by providing that when a receiver is given responsibility for property situated in different districts, 'process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.'" *Id.* (quoting 28 U.S.C. §1692). "Together, these statutes give a receivership court both *in rem* and *in personam* jurisdiction in all districts where property of the receivership estate may be located." *Quilling v. Stark*, 2006 WL 1683442 at *3.

In his briefing to the Court, the Receiver admits that he did not file the necessary documentation contemplated by §754 in the District of Idaho within 10 days of his initial appointment on March 25, 2002. Yet, he maintains that his failure to do so does not preclude a finding of jurisdiction over the Idaho Defendants.

After carefully considering the arguments of both parties, the Court is sympathetic to the Receiver's predicament. When the RDI case was filed, the Receiver was not aware that receivership property was located in Idaho or that residents of Idaho were involved in the Ponzi scheme or had

19

been solicited as investors. In fact, the Receiver diligently filed his orders of appointment in several districts, including the federal district courts of Washington, California, Arizona and Texas. If anything, the Court believes that the Receiver's failure to realize that receivership assets were located in Idaho was aggravated by William Slaney's refusal to fully disclose, in the *Byron* case, the details of his myriad financial transactions (many of which were offshore) and the extent of his ties to BLS. The Receiver only learned of these details once they emerged during the course of his bankruptcy proceedings.

Although the Fifth Circuit has not spoken on this particular issue, other courts have held that a district court may reappoint a federal equity receiver in a securities fraud case in order to "reset" the 10-day clock under §754. *See, e.g., Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Terry v. Walker*, 369 F. Supp. 2d at 820-21; *SEC v. Heartland Group, Inc.*, 2003 U.S. District LEXIS 7478, *15 (E.D. Ill. 2003). Specifically, the Circuit Court for the District of Columbia held that although the district court did not have jurisdiction over the defendants in the case because the receiver failed to timely comply with § 754, the failure to comply with § 754 was not fatal. The district court had the power to reappoint the receiver. Once reappointed, the receiver would have another opportunity to comply with § 754's requirements. The court stated:

> That is not to say that the district court remains powerless to protect the investors. On remand, the court may reappoint the receiver and start the ten-day clock of §754 ticking once again. Presumably, the receiver will take advantage of his second chance to comply with §754 and promptly file the necessary papers in Pennsylvania. Once he does so, the receiver will have jurisdiction over the Pennsylvania property and may seek to have Vista Vision served in Pennsylvania under 28 U.S.C. § 1692.

*SEC v. Vision Commc'n,* 74 F.3d at 291.

The Receiver filed this suit on July 22, 2005. (Dkt. No. 1.) The Receiver admits that he had

not complied with § 754 at that time.  On October 21, 2005, the Idaho Defendants filed their Motion

to Dismiss for lack of personal jurisdiction. (Dkt. No. 37.)  The Court heard oral arguments on that

motion on September 26, 2006.  During oral arguments, the Receiver asked the Court to reappoint

him as receiver so that he could comply with § 754's requirements.  The Court entered an order

reappointing the Receiver on October 4, 2006.  *SEC v. Res. Dev. Int'l*, Civ. No. 3:02-cv-605-R

(N.D.Tex.) (Dkt. No. 1315). Finally, on October 20, 2006, the Receiver notified the Court that he

had, within 10 days of the Court's reappointment order, complied with § 754 by filing his

appointment papers in the District of Idaho.

 The Court finds that the Receiver's reappointment and then timely filing of appointment

papers in the District of Idaho complies with the requirements of § 754.  Therefore, the Court finds

that the Court has jurisdiction over the Idaho Defendants under § 1692.

## III.  CONCLUSION

 For these reasons, the Court **DENIES** the Idaho Defendants' Rule 12(b)(2) Motion to

Dismiss.

**IT IS SO ORDERED.**

**ENTERED: February 22nd, 2007.**

_____
**HON. JERRY BUCHMEYER**
**SENIOR UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**